IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KERNIA MARIA ESPINO | : | |
|     Plaintiff, | | |
|   v. | | |
| | : | CIVIL NO. 09-2603 |
| MICHAEL ASTRUE, Commissioner | | |
| of Social Security | | |
|     Defendant. | : | |

**MEMORANDUM**

**Jones, J.**                                                                                                                                                                                 **March 8, 2011**

    **I.**     **Procedural History**

On November 2, 2005, Kernia Maria Espino (hereinafter "Plaintiff") filed an application for Social Security Disability Insurance Benefits (hereinafter "DIB"), which was denied by the Social Security Administration upon initial review. Plaintiff requested a hearing before an Administrative Law Judge (hereinafter "ALJ"), resulting in a denial of benefits via an Unfavorable Decision, which was issued on August 9, 2007. Plaintiff then sought review by the Appeal Council and said request was denied by Order dated May 21, 2009. Accordingly, the Commissioner's decision to deny benefits to Plaintiff became final, prompting the within action.

On June 9, 2009, Plaintiff filed a Complaint (Doc. No. 1) challenging the decision below. An Answer was filed (Doc. No. 4), subsequent to which, Plaintiff submitted her Brief and Statement of Issues in Support of Request for Review (Doc. No. 5) and Defendant filed an Answer thereto (Doc. No. 8). The matter was referred to United States Magistrate Judge Henry S. Perkin for a Report and Recommendation (hereinafter "R&R"). Upon review of the record,

1

Judge Perkin denied Plaintiff's request for relief and affirmed the decision of the ALJ (Doc. No. 10). Plaintiff filed Objections to Judge Perkin's R&R (Doc. No. 11) and Defendant responded (Doc. No. 12). For the reasons which follow, this Court will deny Plaintiff's Objections and adopt the R&R of the Honorable Perkin.

**II. Standard of Review**

In a Social Security matter such as this, "[j]udicial review of the Commissioner's final decision is limited." *Przegon v. Barnhart*, 2006 U.S. Dist. LEXIS 8924, at \*\*3-4 (E.D. Pa. 2006)(citations omitted). Moreover, once a United States District Court Magistrate Judge has issued an R&R on Plaintiff's appeal of the Commissioner's decision . . .

> . . . [A] party may file timely and specific objections thereto. The district court judge will then make a *de novo* determination of those portions of the report and recommendation to which objection is made. The district court judge may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence, or recommit the matter to the magistrate judge with instructions. In reviewing the Commissioner's decision, the district court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate."

*Watson v. Barnhart*, 2008 U.S. Dist. LEXIS 36286, at \*3 (E.D. Pa. May 2, 2008)(citations omitted).

In this matter, Plaintiff raises four Objections to the R&R. For the reasons which follow, this Court deems each of Plaintiff's Objections to be without merit.

### III. Discussion

#### A. First Objection Regarding Consideration of All Relevant Evidence Pertaining to Plaintiff's Application for Disability Benefits On or Before Her "Date Last Insured" of March 31, 2000

Plaintiff first objects to the Magistrate's conclusion that the ALJ properly considered all relevant evidence in the record and provided an adequate explanation for disregarding Plaintiff's contrary evidence. (Doc. No. 11 at 1.) It is well established that there is "no requirement for [the] ALJ to discuss or refer to every piece of relevant evidence in the record, so long as the reviewing court can discern the basis of decision." *Tisoit v. Barnhart*, 127 Fed. Appx. 572, 575 (3d Cir. 2005), citing *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Plaintiff asserts that her disability commenced on January 10, 2000 - - before her date last insured (hereinafter "DLI") of March 31, 2000. However, both the Magistrate and the ALJ noted "there was a limited period at issue and Plaintiff's only impairments during this time involved her left wrist and elbow." (R&R at 10; Adm. R. at 26-27.) There is substantial support in the record for this conclusion, including notes from February, 2000 by Plaintiff's own physician, Doctor John Williams, and notes from other physicians to whom Plaintiff was referred by Dr. Williams. All of these notes clearly demonstrate a focus on Plaintiff's "left upper extremity," specifically the left elbow, wrist, and fingers. (Adm. R. at 89-91, 270-283.)[1]

Plaintiff further complains that the ALJ improperly characterized her injury "as simply 'bone bruising' with no explanation as to why the vast majority of these objective findings were

---

[1] Plaintiff argues that neither the ALJ nor the Magistrate recognized that as of March 27, 2000, her wrist pain remained "<u>unchanged</u>." (Doc. No. 11 at 4.) However, Plaintiff misstates the conclusion set forth in Dr. Talsania's report of March 27, 2000, where he instead writes that Plaintiff had "continued" wrist pain but that she was improving, therefore he did not feel an EMG would be necessary at that time. (Adm. R. at 282.)

either rejected or ignored." (Doc. No. 11 at 3.)[2] However, it is clear that despite Plaintiff's assertion to the contrary, the ALJ considered her injuries to be far more than "simply [ ] bone bruising." In fact, the ALJ recognized "severe impairments" which included a "left wrist injury and cubital tunnel syndrome of the left elbow" during the relevant time period. (Adm. R. at 26.) The Magistrate not only considered the ALJ's conclusions but similarly recognized considerable injury by noting, "the impairments in Plaintiff's left arm may have been severe. . ." (Doc. No. 10 at 13). However, the Magistrate ultimately concluded that these impairments "did not preclude her from performing all work activity." *Id.* Upon review of the record *in toto,* this Court agrees.

Additionally, Plaintiff takes issue with the characterization of her treatment prior to her DLI as "conservative treatment." (Doc. No. 11 at 2.) Review of the record reveals that actions taken prior to Plaintiff's DLI in fact appeared to be for the purpose of either diagnosis or treatment of pain, including "prescriptions for Vicodin, cortisone injections, and a long-arm splint" for Plaintiff's left arm. (R&R at 11; Adm. R. at 277, 279-82.) The record supports the conclusion of the Magistrate and the ALJ that treatment appeared to be conservative and focused primarily on managing Plaintiff's pain.

Similarly, Dr. Talsania's notes support the finding of both the ALJ and the Magistrate regarding the extent of Plaintiff's injury shortly before her DLI.[3]

---

[2] In making this claim, Plaintiff cites to a medical record dated February 7, 2000. Although Plaintiff provides the first portion of the medical findings in her Objections, she omits that part which reads "No discrete fractures are noted. The subcutaneous fat and muscles visualized are unremarkable. No discrete soft tissue masses are noted. IMPRESSION: Abnormal MRI of the left wrist as detailed. Clinical correlation is suggested." (Admin. R. 89.)

[3] In support of her argument regarding the extent of her injuries between January 10, 2000 and March 31, 2000, Plaintiff cites to medical impressions that were recorded weeks *after* her DLI. Clearly, the information provided by Dr. Talsania just eight days prior to her DLI, is

Finally, Plaintiff's maintains that the Magistrate and ALJ failed to consider her claim that she was "at her wits end" with pain in her left wrist and elbow, and that they failed to consider other objective medical evidence. However, as noted hereinabove, treatment notes from March 27, 2000 - just a few days before Plaintiff's DLI - indicate as follows:

> She has now been in a long arm splint and notes significant improvement in her pain. She states that the pain that was in her hand is gone and the dorsal ulnar wrist pain is gone. **She only has a little bit of pain** and she points volarly to the

---

more probative than that obtained afterwards. Dr. Talasmia's report dated February 23, 2000 contains the following impressions:

> 1. Left ulnar sided wrist pain. This is likely ECU tendinitis plus or minus TFCC tear. I discussed with her the anatomy. In the office I injected both the ECU tendon sheath as well as the ulnar carupus with Celestone and Lidocaine. After several minutes a lot of pain was improved.
>
> 2. Cubital tunnel. I discussed with her conservative treatment of extension splinting. I referred her to Good Shepherd to get a resting long arm splint in about 45 degrees of extension. This will help with pronation and supination as well as calm down the ulnar nerve.
>
> I will see her back in six weeks for a repeat evaluation. I want her wearing the splint full time except to come out a couple times a day to range the elbow. Should her numbness and tingling continue before recommending and arthroscopy, I would also like to get a nerve conduction study/EMG to assess the ulnar nerve.

(Admin. R. 280.)

Additionally, on March 27, 2000 - - just <u>four</u> days prior to her DLI, Plaintiff saw Dr. Talsania again. In his report, the doctor noted that Plaintiff informed him of "significant improvement in her pain. She states that the pain that was in her hand is gone and the dorsal ulnar wrist pain is gone. She only has a little bit of pain and she points volarly to the FCU tendon and the pisiform. The medial elbow pain and the numbness and tingling is improved as well." (Admin. R. 282.) Accordingly, Dr. Talsania ultimately concluded that overall, Plaintiff was "improving" at that time. *Id.* Plaintiff's next medical assessment did not occur until April of 2000 - - after the DLI.

Accordingly, the findings of both the ALJ and the Magistrate are completely consistent with Dr. Talsania's medical impressions during the pertinent period of time.

5

>   FCU tendon and the pisiform. The medial elbow pain and the numbness and tingling is improving as well.

(Adm. R. at 282)(emphasis added.)

In view of the foregoing, this Court finds that there is clearly significant evidence of record which supports the conclusions of both the Magistrate and the ALJ that Plaintiff was not disabled on or before her DLI. It is well-established that the reviewing court is "not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. Pa. 2002), citing *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, Plaintiff's first Objection is without merit.

### B. Second Objection Regarding the Weight Assigned to the Opinion of Plaintiff's Treating Physician, Jay Talsania, M.D.

Plaintiff next objects to the Magistrate's conclusion that the ALJ gave appropriate weight to the opinion of Plaintiff's treating physician, Dr. Jay Talsania. Dr. Talsania concluded that Plaintiff was disabled before her DLI. In a letter written to Plaintiff's counsel on July 5, 2007, Dr. Talsania stated, "It is within a reasonable degree of medical certainty that Ms. Espino was indeed 'disabled' before March 31, as of February 23, 2000 when I first met her, she was not able to use her arm." (Adm. R. at 559.) However, the ALJ concluded that Dr. Talsania's opinion was "contradicted by contemporaneous notes and cannot be given significant weight." (Adm. R. at 29.)

It is well-settled that:

> The opinions of treating physicians should be given great weight, but [ ] an ALJ 'may reject a treating physician's opinion outright . . . on the basis of contradictory medical evidence.' Similarly, [ ]the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record. Otherwise, the

> opinion should be given weight proportional to the medical evidence presented by the treating physician to support the opinion.

*Johnson v. Comm'r of Soc. Sec.*, 2010 U.S. App. LEXIS 22435, 20-21 (3d Cir. 2010)(internal citations omitted). *See also* 20 C.F.R. § 416.927(d)(2)(providing in pertinent part that a treating physician's opinion will be given controlling weight only if said opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . ."). However, as the Magistrate herein correctly pointed out, "*The ultimate disability determination* . . . is reserved for the ALJ and a treating physician's opinion on the topic is not entitled to any special significance." *Id*. at 14, citing *Walker v. Barnhart*, 111 Soc.Sec.Rep.Service 567, 568 (E.D. Pa. 2006)(emphasis added).

This Court's independent review of the record supports the ALJ's conclusion. Dr. Talsania's opinion regarding Plaintiff's disability - offered more than seven years after her DLI - is contradicted by his contemporaneous treatment notes, which indicated that while Plaintiff had significant symptoms and limitations in her left arm, her range of motion and strength in her right arm was essentially normal. (Adm. R. at 29, 282.) Substantial evidence supports the conclusion of the ALJ that "simply because Plaintiff had limited use of her left arm does not mean that she could not perform any work, especially since she was not precluded from using her right arm, and could sit, stand, and walk without restriction." (R&R at 16; Adm. R. at 28.)

The Magistrate also addressed Plaintiff's assertion that the ALJ erred in failing to consider supporting treatment notes dated February 23, 2000, March 27, 2000, and April 6, 2000, in conjunction with the MRI dated February 7, 2000 and the EMG/Nerve Conduction Study dated April 14, 2000. (Doc. No. 11 at 6.) In doing so, Judge Perkin properly points out that "the

ALJ explicitly considered and accounted for what these tests ultimately showed, that Plaintiff had a severe upper extremity impairment." *Id.* at 16, n.6, citing Adm. R. at 26-28. However, despite recognizing that impairment, the ALJ ultimately concluded that Plaintiff was not disabled. *See Parks v. Comm'r of Soc. Sec.,* 2010 U.S. App. LEXIS 23986, at *4 (3d Cir. 2010)(noting the Social Security Act's definition of "disability" in relation to a "severe impairment" and the fact that the two are mutually exclusive; a finding of severe impairment does not necessarily warrant a finding of disability).

Based upon the foregoing, Plaintiff's assertions of error are unfounded.

    **C.** **Third Objection Regarding Magistrate's Conclusion that "Substantial Evidence" Supports the ALJ's Residual Functional Capacity Determination**

Plaintiff next objects to the Magistrate's conclusion that the ALJ properly determined her Residual Functional Capacity (hereinafter "RFC"), despite evidence Plaintiff presented regarding her subjective symptoms, including the pain and side effects caused by medication. (Doc. No. 11 at 6-10.)

As correctly noted by Judge Perkin, a two-step process must be applied in order to determine whether an individual is disabled as a result of subjective symptoms. (R&R at 18, citing 20 C.F.R. § 404.1529(a).) First, a plaintiff must demonstrate that the objective evidence could reasonably be expected to produce subjective symptoms. *Id*. If so, the ALJ must then determine whether the symptoms "limit claimant's capacity to work" by "assess[ing] the degree to which claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Id*., citing *Hartrantf v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). However, this

8

Court must also recognize that:

> [A]lthough '[t]estimony of subjective pain and inability to perform even light work is entitled to great weight,' an ALJ may nonetheless reject a claim of disabling pain where he 'consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record.'

*Harkins v. Comm'r of Soc. Sec.*, 2010 U.S. App. LEXIS 20964 (3d Cir. 2010)(internal citation omitted).

Plaintiff alleges that the Magistrate and the ALJ rejected her testimony and failed to address it in reaching their conclusions. To the contrary, the record clearly shows that the ALJ considered Plaintiff's subjective symptoms at great length and determined that Plaintiff's testimony was not entirely credible. (Adm. R. at 28-29.) The ALJ specifically enumerated seven factors to be considered in addition to the objective medical evidence. *Id*. The ALJ then concluded that although Plaintiff had satisfied the first requirement by demonstrating medically determinable impairments that could have been reasonably expected to produce the alleged symptoms, her . . .

> . . . statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible, with regard to her condition, on or prior to her date last insured. The evidence shows that, after her last date insured, she had additional, and progressive, orthopedic limitations and symptoms, but she did not have any work-preclusive limitations during the period under review. Prior to and on her date last insured, the claimant had limited use of her left upper extremity, but she was able to perform work which did not involve significant use of her dominant hand and arm. The record shows that the claimant had progressive orthopedic impairments and a pain syndrome, and her condition was significantly worse, years after her insured status expired and after multiple surgeries. Her current condition, however, is not material to her disability status prior to and on her date last insured.

*Id*. at 30.

Contrary to Plaintiff's allegation, the ALJ clearly provided her reasons for rejecting Plaintiff's subjective complaints of pain. Additionally, the Magistrate correctly recognized that the ALJ "did not totally discount all of Plaintiff's subjective complaints, but rather accommodated them to the extent they were consistent with the overall record." (R&R at 24.)[4] Again, the decision before the ALJ was whether Plaintiff was disabled on or before her DLI, not sometime after. Accordingly, the Magistrate properly credited the ALJ's finding that the record did not contain medical documentation of disabling side effects from Plaintiff's medication that existed prior her DLI. *Id*. at 24. Regarding Plaintiff's claim that the ALJ failed to address her testimony pertaining to drowsiness, the Magistrate properly found "there has been no medical documentation of any side effect noted in the record . . . [W]here the ALJ properly performs a credibility determination and finds that the claimant's reports of limitations were not fully credible, the ALJ need not include such limitations in his final determination of Plaintiff's [RFC]." *Id*. at 24. Again, Plaintiff cites to no evidence in the record other than her own testimony, which the ALJ considered and declined to fully credit. The ALJ's determination regarding Plaintiff's RFC is supported by substantial evidence and therefore proper.

---

[4] This Court's review of the record similarly yields inconsistencies between Plaintiff's testimony and contemporaneous treatment notes. For example, Plaintiff testified in part that when she injured herself in January of 2000, ". . . the pain ***never*** got better." (Admin. R. 570)(emphasis added.) This testimony, taken on June 22, 2007, is clearly inconsistent with Dr. Talsania's February, 2000 treatment notes.

### D. Plaintiff's Fourth Objection Regarding Application of the Grid Rules at Step Five of the Sequential Evaluation Process

Lastly, Plaintiff objects to the Magistrate's conclusion that the ALJ properly applied the Grid Rules at Step Five of the Sequential Evaluation Process. (Doc. No. 11 at 10.) Specifically, she asserts that since she could not perform a "full range" of sedentary work, the occupational base was "significantly eroded" and the ALJ erred in concluding that she was capable of performing other available work. (Doc. No. 11 at 11-12.)

The ALJ concluded that as of Plaintiff's DLI, she had "severe impairments" in her left wrist and elbow and that "she was unable to perform any significant gross or fine dexterity with her dominant hand." (Adm. R. 26-28.) However, the ALJ also recognized that "the claimant had no limitations in her ability to sit, stand or walk; had no limitations in dexterity in her non-dominant hand; could lift and carry up to 10 pounds occasionally with her non-dominant hand, with an occasional assist from her dominant hand, if needed" and as a result, "the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. . . " (Adm. R. at 27-28.) Finally, the ALJ found that in light of Plaintiff's age, education, work experience and RFC, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Adm. R. at 31.)

Plaintiff's Objection is based upon SSR 96-9p,[5] the purpose of which is to "explain the Social Security Administration's policies regarding the impact of a residual functional capacity (RFC) assessment for less than a full range of sedentary work on an individual's ability to do other work." *Id.* at *1. Judge Perkin expressly considered this argument and found it was

---

[5] 1996 SSR LEXIS 6 (SSR 1996).

without merit: ". . . although [Plaintiff] was limited in the use of her dominant hand, and could not perform the full range of sedentary work, this fact alone did not compel the ALJ to find her disabled." (R&R at 25-26.)[6]

In assessing Plaintiff's claim, Judge Perkin reiterated the applicable standard applied by the ALJ:

> As explained by SSR 96-9p, in circumstances where the individual cannot perform the full range of sedentary work, as Plaintiff here, 'consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience.'"In this case, as noted by Defendant, the ALJ appropriately consulted a VE to assess the impact of Plaintiff's RFC on the occupational base and to identify whether there were other occupations she could perform in the national economy.

*Id.* at 26-27.

The vocational expert in this matter testified that, based on Plaintiff's RFC, she was "capable of performing other unskilled and semi-skilled sedentary and light jobs, including a blood bank order clerk, an information clerk, a storage facility clerk, a photo finishing counter clerk, and a food and beverage order clerk." (R&R at 27-28, citing Adm. R. 586-589.)

In lodging the instant Objection, Plaintiff fails to recognize that which SSR 96-9p specifically emphasizes:

> [A] finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of "disabled." If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering

---

[6] This Court notes that "[r]epeatedly, courts, both within and outside of the Third Circuit, have held that objections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review." *Morgan v. Astrue*, 2009 U.S. Dist. LEXIS 101092, at * 8 (E.D. Pa. Oct. 30, 2009).

age, education, and work experience.

1996 SSR LEXIS 6, at *1 (SSR 1996).

Plaintiff's Objection fails because although she may not have been able to perform a full range of sedentary work, there was substantial evidence of a significant number of jobs in the national economy that Plaintiff was capable of performing. The decision of the ALJ was supported by substantial evidence, including the expert testimony of the VE.[7]

---

[7] It is undisputed that "[a] vocational expert's testimony given in response to a hypothetical 'that fairly set[s] forth every credible limitation established by the physical evidence' may be relied upon as substantial evidence that a claimant is not disabled." *Runkey v. Comm'r of Soc. Sec.*, 288 Fed. Appx. 26, 28 (3d Cir. 2008)(citation omitted).

**IV. Conclusion**

For the reasons set forth hereinabove, Plaintiff's Objections to the Honorable Perkin's Report and Recommendation are hereby overruled and the Report and Recommendation is adopted in its entirety.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II  J.